CONTINENTAL TRUST CO. OF NEW YORK et al. v. TOLEDO, ST. L. & K. C. R. CO. et al.

(Circuit Court, N. D. Ohio, W. D.   January 19, 1900.)

**1. EQUITY—VALIDITY OF DECREE—WHO MAY ATTACK.**

General creditors of a railroad company, who appear before a master to prove their claims in a creditors' suit, but who do not file intervening petitions or otherwise become parties to the record, have no standing to file a petition attacking the validity of the decree entered in the suit, unless by leave of court.

**2. SAME—FEDERAL COURTS—CONSENT HEARING OUTSIDE OF DISTRICT.**

By consent of the parties a cause in equity may be finally heard and decided by a circuit judge of the United States within his circuit, but outside of the district in which the cause is pending; and a recital in the decree directed to be entered on such hearing, in accordance with the usual practice, that the cause was heard in open court in the district, is conclusive on all the parties who participate in the hearing.

**3. SAME—FAILURE TO JOIN IN APPEAL—ESTOPPEL.**

Parties to a suit in equity who are brought into appellate proceedings by citation, and given an opportunity to appeal, of which they do not avail themselves, cannot thereafter attack the validity of the decree by a petition filed in the lower court.

**4. APPEAL—AFFIRMANCE OF DECREE—EFFECT OF MANDATE.**

After the circuit court of appeals has affirmed a decree of the circuit court on appeal, and has issued its mandate, the circuit court cannot entertain a petition to modify or expunge such decree.

Petition to Expunge Decrees of George N. Thornton and Franklin J. Sawyer.

This is a petition, filed by George N. Thornton and Franklin J. Sawyer, to expunge from the record of this court decrees for sale entered in the above-entitled cause on April 1, 1898, the modification of that decree entered May 16, 1898, another decree of sale on the creditors' bill of Stout & Purdy, entered May 16, 1898, and two decrees of November 13, 1899, in execution of the mandate of the circuit court of appeals affirming the three first-mentioned decrees, on the ground that William H. Taft, circuit judge, whom the record shows to have been present at Toledo when said decrees were entered, was not present and did not hold court as therein recited, but was in Cincinnati, and directed the decrees to be entered by letter written from Cincinnati to the clerk at Toledo. The above-entitled litigation has been pending in the circuit court of this district and in the court of appeals of this circuit for, now, seven years. A full account of the litigation may be had by reference to the opinions of this court, to be found under the above title, in 82 Fed. 642, and 86 Fed. 929, and to the opinion of Judge Lurton, speaking for the court of appeals, reported under the title of Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 155, 95 Fed. 497.

Shortly stated, the litigation was begun by a general creditors' bill of Stout & Purdy, judgment creditors of the Toledo, St. Louis & Kansas City Railroad Company, against the railroad company. Under this bill a receiver was appointed, and thereafter a dependent bill was filed by the Continental Trust Company, in this court, to foreclose a first mortgage upon the defendant company's property, securing $9,000,000 of its bonds. The cause was delayed because of the controversy raised by preferred stockholders claiming the right to appear by answer and by cross bill in their own interest, as distinguished from that of the common stockholders, who controlled the defendant company and its answer. The controversy was taken to the court of appeals, and there decided under the name of Hamlin v. Trust Co., 47 U. S. App. 422, 24 C. C. A. 271, 78 Fed. 664, 36 L. R. A. 826. When the mandate in the Hamlin Case came down, the district judge for this district was absent from the district on account of his health. Therefore all the then parties to the record applied to Judge Taft to hear the cause, and to pass upon certain preliminary motions

necessary to shape the cause for hearing. Notice was duly given to all parties of a hearing at Cincinnati before Judge Taft. All the parties to the. record appeared either in person or by counsel, and the hearing was had in Cincinnati. The case was fully argued in behalf of every interest, and thereafter the court filed an opinion in which the orders to be made were fully indicated. This is the opinion reported in (C. C.) 82 Fed. 642. Upon due notice to all parties, a further hearing was had at Cincinnati as to the form of the orders to be made, and a motion to modify the orders was made by those asserting the invalidity of the mortgage and the bonds issued thereunder. The orders were accordingly modified, and, upon being signed, were sent from Cincinnati to Toledo. One of these orders directed the master theretofore appointed to advertise for claims of creditors under the prayer of the general creditors' bill, and the master was directed to report the claims made, and it was permitted that each creditor be allowed to object to the claims of other creditors in accordance with the practice in equity. Another order allowed judgment creditors, as parties to the creditors' bill, to file intervening petitions against the trustee under the mortgage, attacking the validity of the bonds secured thereby. Issues were made on these intervening petitions by answers and replications, and an immense mass of testimony was taken on them. When all the proof had been taken, upon due notice to every party to the record, a final hearing was had at Cincinnati; and every party to the record was present in person or by counsel at the hearing, and full argument was made on behalf of every interest, and briefs were subsequently submitted. An elaborate opinion, reported in 86 Fed. 929 (C. C.), was mailed from Cincinnati to Toledo by Judge Taft, and it was filed there. After the opinion had been on file for some weeks, notice was duly served by counsel for the complainant trust company upon all the parties to the record, both in the foreclosure suit and in the creditors' bill, that a motion would be made before Judge Taft at Cincinnati for a settlement and entry of the decree. All the parties appeared, either in person or by counsel, and the decree was settled at Cincinnati, and was sent from there by the judge to Toledo to be entered; and it was entered, as all the parties understood it would be, as if the hearing had been had at Toledo, and the judge had been present there. Subsequently a modification of the decree was made, affecting only the issue between the common stockholders and the preferred stockholders; and the modification was made after due notice to Kneeland, who had filed an answer and cross bill on behalf of the common stockholders. Upon the same day a decree was entered upon the creditors' bill ordering the sale under the foreclosure to stand as the sale under the creditors' bill, and remitting the question of priority as between the claims filed under the creditors' bill until after the sale of the property. This was entered after due notice to all the parties of record in the creditors' bill. Thereafter, on May 3, 1898, as appears by the records of this court, a petition for the allowance of an appeal was filed by the Building & Contracting Company of Kentucky and the Rhode Island Locomotive Works, by Potter & Emery, William B. Sanders, and J. D. Springer, their solicitors; the Rhode Island National Bank and the Signal Oil Works, Limited, by William B. Sanders and J. D. Springer, their solicitors; Ferdinand E. Canda, by Smith & Baker, William B. Sanders, and J. D. Springer, his solicitors. Accompanying this petition was filed an assignment of errors, 71 in number. Subsequent to this, the decree, as already stated, was modified on May 16, 1898, and the decree of the creditors' bill was entered. Thereafter the petition for the allowance of the appeal came on to be heard, and it was found by the court that all the parties to the record had been notified of the application for the appeal, and that notice of the application had also been served on all the persons who had filed their claims before the master as creditors under the creditors' bill, among whom were George N. Thornton and Franklin J. Sawyer, the petitioners at the bar. At the hearing of this petition 17 additional assignments of error were filed, and others of the parties to the record, together with one creditor who had filed his claim under the creditors' bill, became parties to the appeal. The appeal was allowed, and special orders made for the citation of the parties. Thereafter all the parties to the record were served with citation, as well as all the persons filing their claims before the master. Among the persons thus cited upon appeal, who had filed their claims before the master, were George N.

Thornton and Franklin J. Sawyer, the petitioners here. Thornton and Sawyer had filed objections to the claims of the trust company before the master. No objection was made, of record or orally, or in any way at any time, to the settling and entry of the decrees at Cincinnati before Judge Taft, in his chambers at that place; and the decrees signed by him were therefore entered at Toledo, as if he were present at that place., Thereafter the 88 assignments of error were filed on appeal, and no mention was made in any way of this alleged irregularity as an objection to the validity of the decrees. The appeal was taken, and 4,000 printed pages of the record were transcribed and carried into the court of appeals, and there printed.' The cause was heard at length in the court of appeals. No objection of the kind here made was made, orally or of record, in that court, to the decrees, and judgment was rendered in the court of appeals affirming in every material respect, except a provision as to the preferred stockholders, the decrees entered in the court below; and the mandate of the circuit court of appeals was sent down, directing the execution of the decrees in accordance with its opinion, and the modification of it indicated therein. After the mandate reached the circuit court, counsel for the complainant trust company issued a notice to all the parties of record in the circuit court of their intention to apply to Judge Taft, at Cincinnati, for a settlement and entry of the decree and order upon the mandate of the circuit court of appeals. All of the parties appeared, or were represented by counsel, and the decree was there settled. Among the counsel present was Mr. J. D. Springer, who appears of record in the case as counsel and solicitor for Franklin J. Sawyer, one of the petitioners, and a claimant and objector before the master, though he does not sign this petition. Mr. Springer does, however, make an affidavit, which is filed in support of the petition, in which he says that before the appeal in the cause was taken he was in Toledo, and examined the decrees, and found that the record recited the fact of Judge Taft's presence in Toledo, when he knew that he was in Cincinnati, and that he learned that this was the customary mode of entering decrees in such cases. Mr. Springer was leading counsel for many creditors, and most active in opposition to the foreclosure of the mortgage and collection of the bonds. The last decree was entered November 13, 1899, and on the 18th day of December these petitions are filed; and proof is offered to sustain the averments of them by the affidavits of S. H. Kneeland, J. D. Springer, John Ford, counsel for Kneeland, and the clerk of the court. Each of the petitions avers "that your petitioner was not notified of, and in no wise participated in, any of the said acts or proceedings before the said the Honorable William H. Taft aforesaid, and in no wise consented to any action being taken therein by the said the Honorable William H. Taft, and has never in any wise consented to the determination of his rights by or before the said the Honorable William H. Taft, nor has he in any wise waived or relinquished his right to the determination of his rights in the premises by this court."

Cary & Whitridge, for Continental Trust Co.

Pliny B. Smith, for Geo. M. Thornton and F. J. Sawyer.

J. D. Springer, for Toledo, St. L. & K. C. R. Co. and others.

RICKS, District Judge (after stating the facts as above). These petitions will be stricken from the files for the reason that they were filed without leave of court, and by persons who are not parties to the cause in this court. The consolidated case was made up of two causes,—one a foreclosure suit, and the other a creditors' bill. The petitioners were not parties to the foreclosure suit. They were not made parties by the bill of complaint, and they did not attempt to, and were not allowed to, intervene by petition. They were mere general creditors, who had no right to be heard on the issue of foreclosure between the trustee of the mortgage and the defendant railroad company. They had attained no lien on the property, by judgment or otherwise, and were not entitled to resist the prayer of foreclosure. So much for the foreclosure decree. As

to the decree on the creditors' bill, they were not parties to the record. They filed no intervening petition, and all they did was to appear before the master, and file their claims and make objection to other claims. They were but quasi parties, and have no right to be heard in this cause, except after leave obtained of the court.

This would dispose of the petitions, but we prefer also to consider them on their merits. It is unnecessary for us to consider the question whether it is within the power of a circuit judge to direct the entry of a decree of sale in one district of his circuit, when he is sitting in another, without the consent or acquiescence of the parties. It is clear that, by consent of the parties, a cause in equity may be finally heard and decided by a circuit judge within his circuit, but outside of the district in which the cause is pending. In Doggett v. Emerson, 1 Woodb. & M. 1, 7 Fed. Cas. 819, Mr. Justice Woodbury had occasion to consider the validity of a final hearing by Mr. Justice Story of a suit in equity pending in the district of Maine, which was heard, by agreement of parties, before the circuit judge, in vacation, at Boston; and it was said in that case that no one of the parties consenting to such hearing could impeach the validity of the hearing and decree on account of the time or the place at which the hearing was had, and the decree directed to be made. Speaking of the opinion rendered upon such a hearing, the court said:

"It shows what is the decree of the court, as much as an opinion, read by one of the judges in the court room, containing the views of the court, shows the opinion of the court. If both are completed and announced to the parties at the time and place agreed by them, they are finished, except the mere entry of them on the docket and record. The subsequent steps are rather steps to enforce or carry them into effect, than parts of the decree and opinion themselves."

No such authority was necessary, however, in courts of the United States, to sustain the view that, where parties consent to the final hearing of the cause before a circuit judge whose jurisdiction is throughout the entire circuit, such consent authorizes the entry of the decree in the court where the cause is pending, and upon its records, as if the cause had been heard in open court at that place. No other construction can be put upon the consent of the parties to have the final hearing at some other place than that fixed by law. It has been the uniform practice in this circuit in equity causes for parties to consent to the final hearing of them outside of the district in which they are pending, at some convenient point in the circuit, before the circuit judge, and after consideration, and upon decision, to enter the decree, by direction of the judge, at the place of holding court in the district, as if the judge had been present at the time of hearing the cause and entering the decree. Such practice has been of the greatest convenience to parties and to the judge. It has facilitated the business of the circuit, and made it possible for the circuit judges, whose time has been chiefly taken in appellate work, to assist their brethren, the district judges, in their work in the various districts, in the disposition of causes which in

their nature might be as easily heard at one point as another in the circuit. Patent suits in equity, and suits for the foreclosure of railroads, usually involve the attendance of counsel, most of whom do not reside at the place of holding court; and it is as convenient for such counsel, after the record is made up, to attend the judge at one point in the circuit as at another, and not to wait until such time as he may be able to be present in the district where the cause is pending. If it were to be held that decrees entered in accordance with such practice were null and void, and might be impeached by affidavits or other evidence tending to show that the judge whose presence was recited in the record was in some other part of the circuit upon the day on which the decree in the cause was entered, it is not too much to say that there are many decrees, upon which vast interests are dependent for title and security, and of many years' standing, which will still be subject to impeachment as void. The proof upon this motion shows conclusively, and it is within the personal knowledge of one member of this court, who entered the decrees, that every party to the record was represented at the many hearings which were held, both interlocutory and final, and at the settlement of the several decrees which were made, and that it was clearly understood by all the parties that the final decree was to be entered at Toledo, exactly as if the presiding judge had been present in person at that place. It follows, therefore, that all the parties to the record are bound by the recital of the record, and are estopped to deny it.

But how is the case of the petitioners? They assert that they were parties to the record, and received no notice of the hearings or of the settlement of the decrees at Cincinnati. In the first place, Sawyer, one of the petitioners, has, as his counsel and solicitor, Mr. J. D. Springer, who was present in the court room and in the judge's chambers at Cincinnati on every occasion when any hearing was had, when any order was made, when any decree was settled. In the second place, both Sawyer and Thornton were, out of abundant caution, brought in by citation to the appellate proceedings, and were given an opportunity to join in the appeal. They were thus advised of the decrees which had been entered, and had full opportunity to appeal therefrom, and to be heard upon such appeal; and one person, similarly situated with them, Charles Miller, who was only a general creditor, having filed his claim before the master, was allowed to appeal from the decrees theretofore entered. Notwithstanding this, the petitioners made no objection in the court of appeals that the decrees entered had not been regularly entered according to law. As these petitioners were given an opportunity to join in that appeal, and declined to do so, the order and mandate of the appellate court is as binding upon them as it is upon any of the persons who were regularly parties to the record. Moreover, this court has no power to modify or supersede, in the slightest degree, the decrees which bear the imprimatur of the court of appeals. In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414. It is the duty of this court simply to execute the mandate of that

court. It cannot annul its decree after the expiration of the term at which it was entered. Sibbald v. U. S., 12 Pet. 488, 9 L. Ed. 1167. The supreme court of the United States has said that:

"On a mandate from this court affirming a decree, the circuit court can only record our order, and proceed with the execution of its own decree as affirmed. It has no power to rescind or modify what we have established. * * * After the appeal had been taken, the power of the court below under its own decree was gone. All it could do after that was to obey our mandate when it was sent down. We affirmed its decree and ordered its execution."

In accordance with that duty the decree of November 13, 1899, was entered. It was settled at Cincinnati after due notice to all the parties to the record, and without objection by any of them, in accordance with the course which had been taken with respect to every hearing in the case after the cause had first been submitted to Judge Taft. So far as the foreclosure decree is concerned, the petitioners are not parties to it in any way, and they have no standing to impeach it for any reason. So far as the creditors' bill is concerned, and the decree of the court executing the mandate of the court of appeals upon that, their position is no better. They were not parties to the record, and, so far as the regularity of the decree is concerned, they are bound by the consent of the complainant in the creditors' bill, and the other parties thereto, who for such purpose are representative of the whole class of creditors. It would be the grossest injustice to the parties to this cause, in whose favor those decrees have been pronounced, and who have, in the well-founded belief induced thereto by the consent and conduct of their real opponents, that hearings had and decrees settled at Cincinnati were to be recorded at Toledo as if held or passed at the latter place, expended much time, money, and labor to bring this protracted and burdensome litigation to an end, now to hold that the decrees are as waste paper. For the reasons given, the petitions are held to have no merit in them, and, having been filed without leave, they are stricken from the files.

This action of the court meets the present emergency, and we should be content to leave the matter as it is, were it not that these petitions, considered in the light of all the circumstances, justify the suspicion that some of the defeated litigants in this cause are willing to evade the estoppel against obstructive proceedings which considerations of propriety and good faith to their adversaries and the court would necessarily create, by the instigation of others, with comparatively little interest in the litigation, to a course of obstruction in which it is hoped they may not be met by the estoppel, and which, if successful, will inure to the benefit of all the defeated litigants. Counsel may be easily changed, and new counsel employed, who can deny any consent to proceedings of the court which were induced by the consent and acquiescence of the retiring counsel. We propose, therefore, to remove every shadow of a ground, however slight and unfounded, which the desperation of defeated litigants may seize upon, or the astuteness of compliant counsel may suggest, for future attack upon the regularity of these decrees. Therefore, out of abundant caution, we shall re-enter and confirm

the decrees of November 13, 1899, as of this day. Under that decree the advertisement for the sale has begun, and the date fixed as of the 14th day of February next. Some expense has been incurred thereby. Nevertheless an order will be entered directing the masters to cease the advertisement begun. The decree of November 13, 1899, will be modified so as to extend the time within which the sale may take place to the 2d of April next, and the special masters are authorized and directed to fix a day for the sale, within the time limited, so that due advertisement under the decree may be had before the sale, and to begin a new advertisement accordingly. Proper entries have been prepared by the court, and will be entered by the clerk forthwith.

The full brief of counsel for the petitioners, and all the evidence offered in support of their motions, have been submitted to Judge TAFT, and he joins me in this opinion, and fully concurs therein, and also with the orders and decrees this day entered.